Filed 6/27/25  Baksh v. Goetz CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| AJIM BAKSH,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JUDY NAGY GOETZ, Individually and as Trustee, etc.,<br><br>    Defendant and Appellant. | B339183<br><br>(Los Angeles County Super. Ct. No. 24STCV00856) |

APPEAL from an order of the Superior Court of Los Angeles County.  Holly J. Fujie, Judge.  Affirmed.

Bobko Law, Patrick K. Bobko; Aleshire & Wynder and Norman A. Dupont for Defendant and Appellant.

Alleguez Newman Goodstein, Gary J. Goodstein; Pettler, Miller & Aldover and Ernesto F. Aldover for Plaintiff and Respondent.

This appeal stems from a dispute over the proposed construction of an "infinity" pool on a residential hillside. Judith Nagy Goetz, individually and as Trustee of the Nagy Trust dated May 10, 1988 (collectively Goetz), sought a writ of administrative mandate challenging the decision by the City of Torrance (City) to approve the pool. The pool was to be built on the backyard slope of a home next to a home owned by Goetz. The petition asserted the City's approval of the pool violated the California Environmental Quality Act (CEQA). The trial court denied Goetz's petition.

Ajim Baksh (Baksh) is the real party in interest in the CEQA litigation. After the City approved his plans for the pool and Goetz's CEQA petition was denied, Baksh filed this action against Goetz for malicious prosecution. Baksh alleged Goetz lacked probable cause and acted with malice as shown by her unsuccessful CEQA litigation and inappropriate behavior toward him.

In response, Goetz filed a special motion to strike Baksh's complaint under Code of Civil Procedure section 425.16, commonly known as the anti-SLAPP statute.[1] The trial court denied the motion after finding Baksh established a probability of prevailing on his malicious prosecution claim. Goetz appeals from the order denying the anti-SLAPP motion.

We conclude Baksh presented sufficient evidence of his probability of prevailing on his malicious prosecution claim and affirm the order.

_____

[1] Statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

## FACTUAL AND PROCEDURAL BACKGROUND

**A. Facts**

In 1986 and 1998, landslides involving hillside residences occurred in the City. As a result, the City adopted building and zoning codes governing hillside residential development. (See Torrance Mun. Code, § 91.1.1 et seq.)

Paseo de las Tortugas is a street in a hillside residential development within the City's Hillside Overlay District. (Torrance Mun. Code, § 91.41.1 et seq.) The street is lined with single-family homes in the R-1 zoning district. The home fronts are at street-level; the backyards extend down to retaining walls. Below the walls, the hillside continues to descend. As hillside residents, homeowners are subject to the City's code sections governing home renovation and hillside excavation. (Torrance Mun. Code, §§ 91.41.6—91.41.7, 91.41.9—91.41.13.) The code expressly exempts "swimming pools" from its hillside regulations. (Torrance Mun. Code, § 91.41.14.)

Baksh owns a home at 5109 Paseo de las Tortugas. Goetz owns the adjacent home at 5105 Paseo de las Tortugas. Goetz does not live in the home; her mother and sister live there. The backyards of the two homes share the same hillside.

In 2019, Baksh was granted a Minor Hillside Exemption (MHE) permit to remodel his home after he revised his building plans in response to Goetz's objections.

Baksh then decided to construct an infinity pool and deck on the hillside below his retaining wall. The pool was to be surrounded on three sides by a deck. The fourth side was to feature an exposed "infinity edge" and an unseen catch basin. The pool machinery, which would pump the water into the pool, was to be placed in the interstitial space below the pool deck.

3

In June 2020, Baksh commissioned Hamilton & Associates, a geotechnical engineering company, to investigate the feasibility of building the pool on the hillside. The company performed three monitored "test borings" of the hillside to remove soil samples for laboratory testing. On August 25, 2020, the company reported: (1) no groundwater was found within the depths of the pool; (2) no danger of a landslide existed from earthquake-caused liquefaction; (3) the pool could be safely constructed by employing the proper designs, construction, and (4) the company proposed the use of steel pipes to protect the hillside and the pool.

In December 2020, Baksh applied to the Planning Division within the Community Development Department for a MHE permit to build the pool and submitted the geotechnical report. Goetz opposed Baksh's application. She contended the pool would obstruct her home's ocean view and undermine the stability of the shared hillside as prohibited by Torrance Municipal Code sections 91.41.6 and 91.41.9. Baksh agreed to modify his plans and lower the construction of the pool an additional five feet below the retaining wall to preserve Goetz's ocean view.

The Community Development Director approved Baksh's application for a MHE permit, noting the City's Building and Safety and Grading Divisions would "require detailed information regarding the construction method to ensure proper Code compliance." Then, to be issued a building permit, Baksh had to ensure the pool and deck met the City's building, grading, and safety standards, including geotechnical safety standards. Without a building permit, the construction would not occur.

4

## B.    Administrative Appeals

In June 2021, Goetz appealed the Community Development Director's decision to the City Planning Commission. She argued the decision was contrary to the Torrance Municipal Code. The pool would impede her ocean view, light, air, and privacy rights. Goetz also pointed to the possibility of soil erosion from pool water run-off which could trigger a landslide. She maintained the proposed pool would adversely affect the environment and was thus not exempt from a CEQA environmental impact report (EIR) before a MHE permit could be granted.

Baksh provided the Commission with photographs of a hillside infinity pool at a neighboring home. The home located at 5207 Paseo de las Tortugas is three houses down from Baksh's home and four houses down from Goetz's home. The homes all share the same hillside.[2] The City Council approved a MHE permit for the 5207 home in 2016.

At the appeal hearing, the Planning Commission unanimously denied Goetz's appeal. The Commission specifically determined Baksh's pool was "Categorically Exempted by the Guidelines for Implementation of the [CEQA]; Article 19, Section 15303(e)," i.e., the CEQA exemption for swimming pools. This meant the City would not delay its approval of the requested MHE; no EIR was necessary.

In August 2021, Goetz appealed the City Planning Commission's decision to the City Council. At the October 26, 2021 hearing, Goetz argued sufficient evidence did not support

---

[2] Goetz has not provided the complete administrative record. But according to the City's and Baksh's joint trial brief for the writ petition, one of the pools "sits just 'yards' away from the 1986 landslide," citing the Administrative Record.

5

the Commission's finding of a CEQA categorical exemption. Goetz also submitted a geological survey report by SPC Engineering. The SPC Engineering consultant had visited the pool site and reviewed relevant photographs, design drawings, and historical and public records. In the consultant's opinion, "A geotechnical investigation is warranted, considering the geologic history of the site with significant slope stability problems, as well as to identify the geotechnical parameters for design." Baksh informed the City Council that a geotechnical report of the hillside had already been submitted. Ultimately, the City Council denied the appeal and approved the requested MHE permit.

## C.     CEQA Litigation

Goetz filed a verified petition for writ of mandate and preliminary injunction to compel the City (1) to set aside the approval of the MHE permit because the Class 3 exemption did not apply; and (2) to prepare an EIR before any construction took place. The trial court denied the writ petition following a trial.

## D.     Malicious Prosecution Action and Anti-SLAPP Motion

Thereafter, Baksh filed this action against Goetz for malicious prosecution and civil harassment. For his malicious prosecution claim, Baksh asserted the CEQA litigation terminated in his favor and was brought by Goetz without probable cause and with malice.

In turn, Goetz filed a special motion to strike the action under the anti-SLAPP law.

Following a hearing, the trial court found both claims arose from protected speech. However, the court determined Baksh established a likelihood of prevailing on his malicious prosecution

6

claim and denied the anti-SLAPP motion as to that cause of action. The court granted the motion as to the second cause of action for civil harassment, concluding the claim was procedurally defective.[3] Goetz appealed the order denying her anti-SLAPP motion.

## DISCUSSION

### A. CEQA Overview

CEQA "establishes a comprehensive scheme to provide long-term protection to the environment. It prescribes review procedures a public agency must follow before approving or carrying out certain projects." (*Berkeley Hillside Preservation v. City of Berkeley* (2015) 60 Cal.4th 1086, 1092 (*Berkeley Hillside*).) "Under CEQA and its implementing guidelines, an agency generally conducts an initial study to determine 'if the project may have a significant effect on the environment.' " (*Friends of College of San Mateo Gardens v. San Mateo Community College Dist.* (2016) 1 Cal.5th 937, 945.) "If there is substantial evidence that the project may have a significant effect on the environment," then the agency must generate an EIR prior to approving the pool. (*Ibid.*)

"For policy reasons, the Legislature has expressly exempted several categories of projects from review under CEQA. [Citation.] By statute, the Legislature has also directed the Secretary of the Natural Resources Agency . . . to establish 'a list of classes of projects that have been determined not to have a significant effect on the environment and that shall be exempt from' CEQA." (*Berkeley Hillside, supra,* 60 Cal.4th at p. 1092.)

---

[3] In light of the trial court's ruling, only the malicious prosecution claim is at issue.

There are 33 categorical exemptions.  (Cal. Code Regs., tit. 14, §§ 15300–15333.[4])  Among them is the Class 3 exemption for "Construction or Conversion of Small Structures," which pertains to "[a]ccessory (appurtenant) structures including . . . swimming pools."  (Guidelines, § 15303, subd. (e).)  As discussed, in denying Goetz's appeals, the City concluded Baksh's pool fell into this categorical exemption, thereby obviating the need for an EIR.  (*Arcadians for Environmental Preservation v. City of Arcadia* (2023) 88 Cal.App.5th 418, 429 ["If an exemption applies, the pool is excused from environmental review."].)

Categorical exemptions can be subject to certain exceptions.  If an exception applies, the exemption is foreclosed, and an EIR is necessary.  (*Arcadians for Environmental Preservation v. City of Arcadia, supra,* 88 Cal.App.5th at p. 436; Cal. Code Regs., tit. 14, § 15601, subd. (b)(2).)  In her writ petition's trial brief, Goetz maintained based on the pool's "unusual circumstances" the Class 3 category exemption was unavailable, thereby requiring an EIR.  (See Guidelines, § 15300.2, subd. (c) [unusual circumstances exception].)  It was Goetz's burden to prove the exception applied to the pool.  (*Fairbank v. City of Mill Valley* (1999) 75 Cal.App.4th 1243, 1259.)  This could be accomplished with proof the pool presented unusual circumstances relating to some feature—such as size and location—that distinguished it from other swimming pools in the exempt class.  (*Berkeley Hillside, supra,* 60 Cal.4th at p. 1105.)

---

[4] Sections 15000 et seq. of title 14 of the California Code of Regulations are the implementing administrative regulations, and are referred to as "Guidelines."  (See *Muzzy Ranch Co. v. Solano County Airport Land Use Com.* (2007) 41 Cal.4th 372, 380, fn. 2.)

8

**B.      Anti-SLAPP**

The anti-SLAPP statute provides in relevant part that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech . . . in connection with a public issue shall be subject to a special motion to strike [anti-SLAPP motion], unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  (§ 425.16, subd. (b)(1).)

Ruling on an anti-SLAPP motion involves a two-step process:  First, the court must decide whether the defendant has shown the challenged claim arises from activity protected by the anti-SLAPP statute, and if so, the court then must decide whether the plaintiff has shown a probability of prevailing on the claim.  (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.)  Only a claim that both arises from protected activity and lacks merit is a SLAPP subject to being stricken.  (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89; accord, *Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 874.)

It is undisputed Baksh's malicious prosecution claim arose from protected activity.  Therefore, we limit our inquiry to whether Baksh met his second step burden:  Did he show each element of his malicious prosecution claim has at least minimal merit?

We review a ruling on an anti-SLAPP motion de novo and engage in the same two-step process as the trial court.  (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067.)

9

**C. Did Baksh Establish a Probability of Prevailing on Each Element of His Malicious Prosecution Claim?**

Again, the focus of our analysis is whether Baksh established a probability of prevailing on each element of his malicious prosecution claim. A malicious prosecution claim "consists of three elements. The underlying action must have been: (i) initiated or maintained by, or at the direction of, the defendant, and pursued to a legal termination in favor of the malicious prosecution plaintiff; (ii) initiated or maintained without probable cause; and (iii) initiated or maintained with malice." (*Parrish v. Latham & Watkins* (2017) 3 Cal.5th 767, 775.)

The parties agree the CEQA litigation was initiated or maintained by or at the direction of Goetz and terminated in Baksh's favor. However, the parties disagree whether Baksh made a prima facie showing Goetz pursued the CEQA litigation without probable cause and with malice. We begin with the lack of probable cause element.

" 'In analyzing the issue of probable cause in a malicious prosecution context, the trial court must consider both the factual circumstances established by the evidence and the legal theory upon which relief [was] sought' " in the earlier action. (*Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1540.) " ' "[P]robable cause is lacking 'when a prospective plaintiff and counsel do not have evidence sufficient to uphold a favorable judgment or information affording an inference that such evidence can be obtained for trial.' " ' [Citation.] ' "In a situation of complete absence of supporting evidence, it cannot be adjudged reasonable to prosecute a claim." ' [Citation.] 'When there is a dispute as to the state of the defendant's knowledge and the existence of

10

probable cause turns on resolution of that dispute . . . the jury must resolve the threshold question of the defendant's factual knowledge or belief.' " (*Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 222–223.)

Baksh demonstrated, with at least minimal merit, Goetz lacked probable cause for her contention an EIR was necessitated by the unusual circumstances exception to the Category 3 exemption. There was evidence in the administrative record of the dimensions of Baksh's infinity pool, the materials to be used in its construction, and the way it was to be built on the hillside. There was also evidence of the location of the proposed pool and of other pools situated nearby on the same hillside. Goetz's SPC Engineering report advised that a geotechnical investigation must be conducted before the pool was to be built. Historical documents introduced by Goetz concerned the 1986 landslide in the vicinity and Paseo de las Tortugas's formal designation as part of a hazardous landslide area. Goetz relied on this evidence to show Baksh's pool presented unusual circumstances relating to its large size and dangerous location that distinguished it from "typical backyard pools" and the nearby swimming pools. (See *Berkeley Hillside, supra,* 60 Cal.4th at p.1105.) However, Goetz offered no evidence of the circumstances related to these other swimming pools against which the comparison of the unusual and usual could be made. It was therefore not possible to distinguish the features of Baksh's pool from those of other swimming pools in the exempt class.

We conclude for purposes of the second step anti-SLAPP analysis, Baksh established a probability of prevailing on the issue of whether Goetz pursued the CEQA Litigation without probable cause.

It must be said our evaluation of the lack of probable cause element was made more difficult by the trial court's ruling on the anti-SLAPP motion.

The court (Judge Holly J. Fujie) properly denied the motion as to the malicious prosecution claim.  In doing so, however, Judge Fujie inexplicably chose to rely on the "location exception" (Guidelines, § 15300.2, subd. (a)) in considering the lack of probable cause.  The judge held:  Baksh "points out that this location exception was inapplicable in the underlying CEQA action because such an exception only applied to environmental resources, not proximity to hazards.  (*Berkeley Hills Watershed Coalition v. City of Berkeley* (2019) 31 Cal.App.5th 880, 891.)  Thus, this theory was pursued without probable cause."

Judge Fujie correctly stated the law and a portion of Baksh's opposition to the writ petition.  But, the judge also expressly declined to address whether there was a lack probable cause in terms of the unusual circumstances exception, even though the applicability of that exception was the central issue in the CEQA litigation.

Although Goetz referred to the location exception in her writ petition, she did not develop an argument in support of that exception in her trial brief.  Nor did the trial court (Judge Joel L. Lofton) mention the location exception in an extremely thorough and well-reasoned decision denying the writ petition.  It appears the location exception was not the subject of the CEQA litigation.  Nor did Goetz raise it to the City at any administrative hearings.  Thus, any issues regarding the applicability of the location exception have been forfeited.  (See *Findleton v. Coyote Valley Band of Pomo Indians* (2018) 27 Cal.App.5th 565, 569 [failure to raise them before Judge Lofton]; *Jenkins v. Brandt-Hawley*

(2022) 86 Cal.App.5th 1357, 1381 [failure to raise them before the City].)

Unfortunately, Judge Fujie's error in relying on the location exception prompted the parties to argue the merits of the exception for the first time in their appellate briefs. For our part, we affirm Judge Fujie's order denying the anti-SLAPP motion as employing the wrong reason for the right result. It is a principle of appellate review we are bound to uphold the trial court's ruling if correct on any basis including the wrong reason. (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32; *Day v. Alta Bates Medical Center* (2002) 98 Cal.App.4th 243, 252.)

## D.    Did Baksh Establish a Probability of Prevailing on the Malice Element?

We next turn to the malice element. Malice in connection with malicious prosecution " 'relates to the *subjective intent or purpose* with which the defendant acted.' " (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292.) Malice " 'may range anywhere from open hostility to indifference' "; it is not limited to " 'ill will toward plaintiff but exists when the proceedings are [prosecuted] primarily for an improper purpose.' " (*Ibid.*) As an element of malicious prosecution, malice "reflects the core function of the tort, which is to secure compensation for harm inflicted by misusing the judicial system, i.e., using it for something other than to enforce legitimate rights and secure remedies to which the claimant may tenably claim an entitlement." (*Drummond v. Desmarais* (2009) 176 Cal.App.4th 439, 452.)

In his complaint for malicious prosecution and declaration supporting his opposition to Goetz's anti-SLAPP motion, Baksh

13

detailed how he was consistently harassed and intimidated by Goetz since he began remodeling his home in 2019.

Baksh averred: Goetz frequently visited the home she owned on Paseo de las Tortugas. On those occasions, she would yell at Baksh, his workers, and City inspectors. Goetz would also contact the City with unfounded complaints against Baksh. Another time, Goetz began shaking Baksh's temporary fence and screamed it was not secure. She then turned away, dropped her pants, and "mooned" Baksh and his workers. After Baksh was granted his MHE permit for the pool, Goetz repeatedly appealed and requested continuances. Goetz told Baksh he would never have the pool built because she would keep appealing and seeking continuances. Baksh attempted to have a cordial relationship with Goetz without success. He also revised his building plans in response to her concerns. Goetz said to Baksh, "[Y]our kind does not belong here," and, "[W]e don't want you here." Baksh immigrated from Trinidad and Tobago to the United States in the 1970's.

There clearly was sufficient evidence from which it can be found that Goetz pursued the CEQA litigation with malice. Baksh established a probability of prevailing on the malice element. In ruling on the anti-SLAPP motion, the trial court agreed. Goetz does not challenge the finding of malice on appeal.

## DISPOSITION

The order denying Goetz's anti-SLAPP motion as to the malicious prosecution claim is affirmed. Baksh is entitled to his costs on appeal.

NOT TO BE PUBLISHED.

LUI, P. J.

We concur:

ASHMANN-GERST, J.

RICHARDSON, J.

15